JAMES R. BARBOUR, JR., A CITIZEN AND TAXPAYER, FOR AND ON BEHALF OF RICHMOND COUNTY, v. RAYMOND W. GOODMAN, SHERIFF OF RICHMOND COUNTY, AND RAYMOND W. GOODMAN, INDIVIDUALLY.

(Filed 31 January, 1958.)

1. Counties § 4—Tax collector held entitled to retain commission on prepayments of taxes, the county having ratified the transactions.

   The findings of fact were to the effect that the sheriff of a county was the tax collector thereof, G.S. 105-374, upon a 2 per cent commission, that the county commissioners appointed no prepayment tax

collector, that upon being sworn into office the sheriff was advised that the county auditor would receive prepayments on taxes for him and that he would sign the receipts, that the county auditor did receive and account for all prepayments of taxes, that the auditor turned over the tax books to the sheriff after receipt of all prepayments of taxes, and that the sheriff settled each year with the county for the entire tax levies, which settlement included commissions on prepayments of taxes as well as taxes collected by the sheriff, and which settlement was duly audited and found to be correct by the county auditor and tax supervisor. *Held:* The county is not entitled to recover of the sheriff the commissions paid him on prepayments of taxes, since the county commissioners could have appointed him collector of prepayments of taxes and by their actions ratified him in that position.

2. Same—

A sheriff who is tax collector of the county is entitled under G.S. 105-387(f) to fees for conducting tax sales and, after termination of his office as county tax collector, to fees for such sales made thereafter which constitute the completion of duty begun while in office as tax collector.

APPEAL by plaintiff from *Preyer, J.,* at June, 1957, Civil Term of RICHMOND.

Civil action brought by taxpayer of Richmond County to recover on behalf of the County alleged unearned fees and commissions paid to the County Tax Collector.

The action was brought under G.S. 128-10. Written demand was served upon the chairman of the Board of Commissioners to institute action for the fees and commissions. After the lapse of 60 days with no action being brought, the plaintiff instituted this action.

These are the items sought to be recovered on behalf of the County:

1. The sum of $15,491.00 paid by the County to the defendant as 2% commissions on prepayment taxes for the years 1951, 1952, 1953, and 1954. The prepayments were made direct to Mary Thomas Covington, County Auditor and Tax Supervisor, before the tax books were turned over each year to the defendant, Tax Collector.

2. The sum of $2,804.00 paid by the County as fees for conducting tax sales in 1952, 1953, and 1954, when it is alleged the County Fee Bill made no provision for such fees.

3. The sum of $1,166.00 as fees paid the defendant by the County for conducting tax sales in September, 1955, after the effective date of the County Salary Act, which allegedly terminated the fee system.

The defendant filed answer denying that the County is entitled to any refund.

The case was heard by the presiding Judge on waiver of jury trial. These are the controlling facts found by the Judge:

"4. The defendant was elected Sheriff of Richmond County in the General Election of 1950, served for a four-year term, and was re-elected in 1954 to serve for a second term of four years;

"5. That the Sheriff of Richmond County was on a fee basis from the time he was first elected until December 1, 1954, as fixed by Chapter 235 of the Session Laws of 1947, ratified March 5, 1947. That the defendant was on a salary basis after December 1, 1954, under Chapter 937 of the Session Laws of 1953, except that by Chapter 937 of the Session Laws of 1953, he was to continue as Tax Collector on taxes in his hands for collection until September 1, 1955.

"6. The Sheriff was the Tax Collector of Richmond County by virtue of G.S. 105-374 and gave bond in the amount of $15,000.00 on September 10, 1951, for the faithful performance of his duties of Tax Collector from September 10, 1951, through September 10, 1952, and gave renewal bonds, similar in amount and condition covering each succeeding year through the year ending September 10, 1955;

"7. That Mary Thomas Covington was Auditor and Tax Supervisor of Richmond County for each of the years 1951 through 1955 and she gave bond in the amount of $5,000.00 for each of the years 1951 through 1955, the condition of her bond being the faithful performance by her of her duties as Auditor and Tax Supervisor;

"8. The entire tax levy for each of the years 1951 through 1954 was charged to the defendant R. W. Goodman; all tax receipts for those years were issued in his name; Richmond County paid him two per cent (2%) commission on all taxes collected for the years 1951 through 1954 prior to his settlement and surrender of the tax books for each such year, including prepayments of taxes; the tax books were turned over to him on September 10th on each of these years 1951 through 1954, after all prepayments of taxes had been paid into the Auditor and Tax Supervisor's office; the Sheriff then collected current taxes and all such collections by him were paid by him into the office of the County Auditor and Tax Supervisor; the County Auditor and Tax Supervisor deposited to the credit of the governing body of Richmond County all taxes collected; thereafter the County paid the defendant two per cent (2%) commission on said tax collections for the years 1951 through 1954; the defendant did not withhold any taxes;

"9. All prepayments of taxes were made to the County Auditor and Tax Supervisor, but the minutes of the meetings of the County Commissioners show no order designating her as prepayment tax collector and show no order designating the defendant, nor anyone else, as prepayment tax collector; that the County Auditor and Tax Supervisor in the years 1951

through 1955 did not turn over the tax books to the Sheriff until after the prepaid taxes had been paid into the office of the County Auditor and Tax Supervisor; that the County Auditor and Tax Supervisor deposited these prepayments to the credit of the County.

"10. For each of the years 1951 through 1954 the defendant filed a settlement and account with the County Commissioners before the tax books for the following year were turned over to him; that these accounts were audited and approved and the defendant was discharged as to each of these years; that the amounts paid to the defendant as commissioners on the amount of taxes prepaid to the County Auditor for the years 1951 through 1954 are set out in Exhibit "A" to the Complaint (total amount: $15,491.00); that the amounts paid to the defendant for conducting sales for delinquent taxes in the years 1952, 1953, 1954 and 1955 are as set out in Exhibit "B" of the Complaint (total amount: $2,804.00); that the County paid the Sheriff for conducting the tax sales at the rate of 50c per tract of land sold. This amount was part of the cost of the sale of the property and was recovered by the County when the land in question was redeemed from the sale or was resold by the County.

"11. It had been the custom and practice in Richmond County, at least since 1936, to pay the various Sheriffs, in succession, commissions on all taxes collected in any year prior to the Sheriff's settlement with the County for such year; and it had been the custom since at least 1936 for the County Auditor and Tax Supervisor to accept prepayments of taxes into that office, and for the Sheriff to be paid two per cent (2%) on those prepaid taxes;

"12. On the first Monday in December of 1950, when the defendant was sworn into office, he went to the meeting of the County Commissioners and requested advice as to what revenue he could expect in order that he might set up and budget the operations of his office so that he could determine how many deputies he could afford to employ; that the Chairman of the County Commissioners, Mr. N. Palmer Nicholson, and the County Auditor told him that he would receive two per cent (2%) commission upon all taxes collected in any year prior to his settlement with the County for such year, which was in accordance with the established custom and practice of the County; *and that the Auditor would receive the prepayments on taxes for the defendant, and that the defendant would sign the receipts.* (Italics added.)

"13. The last delinquent tax sale made by the defendant was on September 5, 1955, and that his term as tax collector was terminated by statute effective from and after September 1, 1955; . . . the tax sale so made by the defendant on September

5, 1955, was made pursuant to advertisement by him prior to September 1, 1955. (Note: The total amount of fees here involved is $1,166.00)

"14. The defendant, in due time, fully and properly accounted to and settled with Richmond County for the entire tax levies charged to him for collection for the years 1951, 1952, 1953 and 1954, respectively; his settlement for each such levy has been duly audited and found to be correct by the County Auditor and Tax Supervisor; each such settlement, including the payment of commissions and fees to the defendant as shown in such settlement, was duly examined and approved by the Board of Commissioners and the defendant was duly discharged by the County from all liability by reason of the said tax levies having been so charged to him for collection."

Upon the facts found, the trial court made conclusions of law in part as follows:

"2. Section 6 of Chapter 235 of the Session Laws of 1947 provides that the Sheriff of Richmond County shall receive two per cent (2%) on all taxes collected by him other than Schedule "B" license taxes, of which he shall receive five per cent (5%). This statute contemplates the payment of commissions to the Sheriff on current taxes collected by him in money and does not authorize payment to the Sheriff of commissions on prepayments of taxes paid to another official who had been designated as Collector of tax prepayments under G.S. 105-378.

"3. Under Section 105-378 the County Commissioners were authorized to designate any county official to collect prepayments of taxes;

"4. The County Commissioners never explicitly designated any county official to collect prepayments of taxes, and that no formal order was ever entered in the Minutes of the County Commissioners designating any county official to collect these prepayments of taxes, but the Court concludes as a matter of law that by its failure to designate specifically any county official to collect prepayments under Section 105-378, and by its instructions (given by the Chairman of the Board) to the Sheriff as to the manner of collecting taxes and the payment of commissions, and by its acquiescence in the manner in which commissions were paid to the Sheriffs in the past years, the Board of Commissioners in effect designated the defendant as collector of prepayments of taxes under Section 105-378; (Note: The portion in parentheses above inserted for the purpose of clarification.)

"5. The Court concludes as a matter of law that the County Commissioners by approving the annual settlements of the defendant and in discharging him ratified the procedure followed in each such year by the defendant as Sheriff and Collector of prepayments on taxes and by the County Auditor and Tax

Supervisor *for him,* in the receipt and handling of prepayments on taxes and the payment to him and receipt by him of commissions thereon. There were no allegations of fraud or mistake made by the plaintiff in this case, and the Commissioners reaffirmed their action when this matter was brought to their attention as set out in Exhibit "A" in the Complaint (the plaintiff's demand that the action be instituted by the Board of Commissioners). The Court concludes as a matter of law that since the Board of Commissioners could ratify that which it might have authorized originally and since the County Commissioners could have appointed the Sheriff the collector of prepayments of taxes, the ratification of the above actions was within the authority of the Board of Commissioners, and the County is bound thereby; (Italics added.)

"6. That the fees paid to the defendant for conducting the tax sales for delinquent taxes for the years 1952 through 1954 were properly paid to the defendant under Sections 105-387(f) and 105-424 of the General Statutes.

"7. That the fees paid to the defendant for conducting the tax sale for delinquent taxes on September 5, 1955, were properly paid to the Sheriff under Section 105-387(f) and 105-424 of the General Statutes. The Court concludes as a matter of law that the Sheriff's office as tax collector terminated on September 1, 1955, and that he was no longer entitled to collect taxes after that date and no longer entitled to collect fees for sales of tax liens on real property for failure to collect taxes after that date, but the Court further concludes as a matter of law that, though he was not in office as tax collector on the date of the sale, that he was finishing an uncompleted duty incurred while in office and was entitled to payment therefor."

Judgment was entered by the court decreeing that nothing be recovered of the defendant. From the judgment so entered, the plaintiff appeals.

*Jones & Jones for plaintiff, appellant.*

*Pittman, Webb & Lee and Fletcher & Lake for defendant, appellee.*

JOHNSON, J. A careful study of the plaintiff's exceptions and supporting arguments discloses neither prejudicial nor reversible error. For the reasons stated in the foregoing conclusions of Judge Preyer, who heard the case below, we think the judgment should be upheld: 20 C.J.S., Counties, Sec. 101 p. 898, note 83; 14 Am. Jur., Counties, Sec. 32. See also *Suttle v. Doggett,* 87 N.C. 203. As to the services performed by the County Auditor

and Tax Supervisor, it is manifest that she was acting merely as agent of the defendant Tax Collector.

Affirmed.